IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SALVADOR SANCHEZ, | ) | CASE NO. 3:07 CV 2166 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KHELLEH KONTEH, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the petition of Salvador Sanchez for a writ of habeas corpus brought under 28 U.S.C. § 2254.[2] Sanchez is currently an inmate at the Toledo Correctional Institution in Toledo, Ohio, where he is serving a 24-year sentence imposed in 2005 by the Defiance County Court of Common Pleas.[3] Sanchez was sentenced after pleading no contest to three counts of trafficking in cocaine and one count of engaging in a pattern of corrupt activities.[4]

Sanchez contends first that his sentence, which was imposed on remand following the Ohio Supreme Court decision in *State v. Foster*,[5] deprived him of his right to Due Process

---

[1] ECF # 4.

[2] ECF # 1.

[3] *Id*. at 2.

[4] *Id*.

[5] *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).

by changing, without notice, the potential penalty for acts already committed.[6]  Further, Sanchez maintains that his plea was involuntary, and the state trial court should have permitted him to withdraw it upon a showing that he did not understand he could be liable to greater-than-minimum and consecutive sentences.[7]

The State argues that the first ground should be denied because the state court decision denying the claim was not an unreasonable application of clearly established federal law.[8] In addition, the State asserts that ground two is procedurally defaulted.[9]

For the reasons that follow, I will recommend finding the State's arguments are well-taken as to the first ground for relief and that Sanchez's claim should be denied.  As to the second, I will also recommend that the State's position concerning procedural default be adopted and that this ground, accordingly, be dismissed.  Alternatively, I recommend bypassing the issue of procedural default and denying Sanchez's second ground for relief on the merits.

---

[6] ECF # 1 at 6; ECF # 7 at 16.

[7] ECF # 1 at 8.

[8] ECF # 6 at 19.

[9] *Id*. at 21-28.

# Facts

## A.      Underlying offense, plea and initial sentence

The facts as to the underlying offense, Sanchez's plea, and the initial sentence in this matter were found by the state appeals court[10] to be as follows:

> On August 19, 2005, the Defiance County Grand Jury indicted [Salvador] Sanchez on one count of trafficking in cocaine in violation of R.C. 2925.03(A),(C)(4)(d), a felony of the third degree; two counts of trafficking in cocaine in violation of R.C. 2925.03(A),(C)(4)(3), felonies of the second degree; and one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony of the first degree.

> In September 2005, Sanchez pled not guilty to all the counts in the indictment.  He later changed his plea to no contest.

> In November 2005, the trial court found Sanchez guilty on all the charges and sentenced Sanchez to four years for the count of trafficking in cocaine in violation of R.C. 2925.03(A),(C)(4)(d), a felony of the third degree; seven years for each of the two counts of trafficking in cocaine in violation of R.C. 2925.03(A),(C)(4)(e), felonies of the second degree; and six years for the one count of engaging in a pattern of corrupt activity, a violation of R.C. 2923.32(A)(1), a felony of the first degree.  Additionally, the trial court ordered that the sentences be served consecutively for an aggregate prison term of twenty-four years.[11]

---

[10] Factual findings made by the state appellate court on its review of the record are presumed correct by the federal habeas court.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[11] ECF # 6, Attachment (state record) at 2-3.

**B.     Direct appeal**

Sanchez, through counsel,[12] timely filed a direct appeal from his sentencing asserting

three assignments of error:

> 1.     The trial court erred in imposing consecutive sentences, in violation of
>        Ohio sentencing law.
>
> 2.     The trial court erred in imposing consecutive sentencing without
>        provision of the right to a trial by jury on those facts necessary to
>        impose consecutive sentencing.
>
> 3.     The trial court erred by denying the defense motion in limine regarding
>        the elements of an "enterprise" in Ohio.[13]

The State filed a brief in opposition,[14] to which Sanchez responded.[15]  The Ohio

appellate court thereupon initially overruled Sanchez's argument concerning the motion in

limine since, by pleading no contest, there was never a trial and the preliminary ruling by the

trial court regarding the introduction of evidence caused no prejudice.[16]  However, it also

ruled, pursuant to the recently-decided Ohio case of *State v. Foster*,[17] that the trial court had

--------

[12] Sanchez was represented throughout the state court proceedings by the same
counsel as now represents him here.  *See*, ECF # 6 at 4.

[13] ECF # 6, Attachment at 140.

[14] *Id.* at 189-217.

[15] *Id*. at 218-23.

[16] *Id*. at 228.

[17] *Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470.

-4-

made impermissible findings of fact as part of the sentencing.[18]  The court accordingly vacated Sanchez's sentence, remanding the case for re-sentencing.[19]

## C.    Motion to withdraw the plea and re-sentencing

Subsequent to the appeals court decision to remand, but prior to re-sentencing, Sanchez filed a motion to withdraw his guilty plea with the trial court.[20]

In the motion, Sanchez argued that he was advised by counsel prior to the original sentencing that Ohio's sentencing scheme was unconstitutional.[21]  In that regard, Sanchez also asserted that he was informed by counsel that, should Ohio's sentencing law be declared unconstitutional, he could expect to receive no more than non-consecutive, minimum sentences, since anything more would require facts found by a jury.[22]  However, he maintained, when the Ohio Supreme Court in *Foster* did find the sentencing scheme unconstitutional, it then imposed a remedy that was unforeseen, thus rendering his plea not knowing or intelligent.[23]

---

[18] ECF # 6, Attachment at 228-29.

[19] *Id*. at 229.

[20] *Id*. at 235-39.

[21] *Id*. at 236.

[22] *Id.*

[23] *Id*. at 237-38.

The State filed a brief in opposition,[24] and, after a hearing,[25] the trial court denied the motion to withdraw the plea and re-sentenced Sanchez to the same aggregate term of 24 years in prison.[26]

**D.     Appeal from denial of motion to withdraw the plea and re-sentencing**

Sanchez, again through counsel, timely filed a notice of appeal from the denial of his motion to withdraw his plea and from the re-sentencing.[27]  In this appeal, he presented the following two assignments of error:

1.      Trial court imposed a sentence pursuant to an ex post facto judicially-created sentencing law, in violation of his right to freedom from such enactments and in violation of due process.

2.      The trial court erred in denying Mr. Sanchez's motion to withdraw [his] plea.[28]

The State filed a responsive brief,[29] and the Ohio court of appeals affirmed the decisions of the trial court both as to denying Sanchez's motion to withdraw his plea and regarding his re-sentencing.[30]

_____

[24] *Id*. at 240-45.

[25] *Id.* at 22-46.

[26] *Id.* at 247-51.

[27] *Id*. at 253.

[28] *Id*. at 261.

[29] *Id*. at 281-304.

[30] *Id*. at 338-46.

Specifically, as to the first assignment of error, the appeals court concluded that because Sanchez's crimes were committed after the United States Supreme Court in *Apprendi* had already signaled a shift in sentencing law, and, further, since the sentencing range for these offenses was not altered by *Foster*, Sanchez was on notice that while the sentencing schema was changing, his potential penalties were unchanged, thus precluding a finding that due process was violated.[31]

As to the claim regarding withdrawal of his plea, the court concluded that the trial court was without jurisdiction to entertain such a motion after Sanchez's judgment of conviction was affirmed on appeal.[32]  Moreover, even if it did have such jurisdiction, Sanchez had only appealed from his sentence, not the judgment of conviction on his plea. Thus, any attempt to raise an issue concerning the conviction after he failed to do so on the first appeal would have been barred by *res judicata*.[33]

Sanchez moved for reconsideration of this ruling.[34]  His motion was denied.[35]

Thereupon, Sanchez timely filed a notice of appeal to the Supreme Court of Ohio,[36] asserting in his jurisdictional memorandum the following two propositions of law:

---

[31] *Id*. at 343.

[32] *Id*. at 344-45.

[33] *Id*. at 345.

[34] *Id*. at 348-53.

[35] *Id*. at 354.

[36] *Id*. at 357-58.

1.      Ohio sentencing law is unconstitutional for violation of the right of due process.

2.      The trial court should have permitted Mr. Sanchez to withdraw his plea.[37]

The Ohio Supreme Court, without opinion, then declined jurisdiction, dismissing the appeal as not involving any substantial constitutional question.[38]

## E.      Federal habeas petition

Sanchez then timely filed the present petition for a federal writ of habeas corpus, asserting two grounds for relief:

1.      The sentence imposed in this case, of a non-minimum, consecutive sentence for a person who had no prior prison time, was unconstitutional for violation of his rights of presentment to a grand jury, to trial by jury, and to proof beyond a reasonable doubt of essential facts without which such sentence could not be imposed.[39]

2.      The plea in this case was not voluntarily made, in violation of federal rights to Due Process, such that the trial court should have allowed Mr. Sanchez to withdraw his plea.[40]

As noted previously, the State, in response, argues first that ground one should be denied because Ohio's post-*Foster* sentencing scheme does not violate the prohibition on *ex post facto* legislation.[41] In addition, it contends that ground two is procedurally defaulted

---

[37] *Id*. at 360.

[38] *Id*. at 382.

[39] ECF # 1 at 6.

[40] *Id*. at 8.

[41] ECF # 6 at 14-19.

either because the state trial court had no jurisdiction to consider the claim after the conviction was final or because *res judicata* barred presenting this claim after the conclusion of the initial appeal.[42]

Sanchez has filed a traverse, arguing first that retroactive application of *Foster* to crimes committed prior to that decision violates due process.[43]  Sanchez also maintains that he should be permitted to withdraw his plea because he was induced to enter it by the pre-*Foster* status of Ohio law.[44]

## Analysis

**A.    Standards of review**

*1.    Unreasonable application of clearly established federal law*

Under the controlling statute, a writ of habeas corpus may issue in a case where the state court has previously addressed the merits of a claim only if that decision was contrary to clearly established federal law or was an unreasonable application of that law to the facts of the petitioner's case.[45]  A federal law is "clearly established" for the purpose of providing a basis for habeas relief only by the holdings of the Supreme Court of the United States, not

------

[42] *Id*. at 25-26.

[43] ECF # 7 at 10-19.

[44] *Id.* at 19-20.

[45] 28 U.S.C. § 2254 (d)(1); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).

its dicta.[46]  Moreover, the law must be so established at the time of the state court decision being challenged by the petitioner.[47]

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" contained in the statute.[48]  A state decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by the Supreme Court on a question of law or arrives at an opposite result when considering a materially indistinguishable set of facts from that involved in a Supreme Court holding.[49]  A state decision involves an unreasonable application of clearly established federal law if the court correctly identifies the clearly established federal law from the holdings of the Supreme Court but then unreasonably applies that holding to the facts of the petitioner's case.[50]  Relief is available here if the state court unreasonably refused to extend a legal principle from a holding of the Supreme Court to a new context.[51]  However, for the writ to issue, the state court adjudication must be "objectively unreasonable" and not simply erroneous or incorrect.[52]

---

[46] *Williams*, 529 U.S. at 412.

[47] *Id.*

[48] *Id.* at 404-05.

[49] *Id*. at 405-06.

[50] *Id*. at 407-08.

[51] *Id*. at 407.

[52] *Id.* at 409-11.

It must be noted that "if there is *no* 'clearly established federal law, as determined by the Supreme Court,' that supports a habeas petitioner's legal argument, the argument must fail."[53]

## 2.    *Procedural default*

Under the doctrine of procedural default, a federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of his claim in the state court either because he failed to properly raise it when remedies were still available or because the state court declined to reach the merits due to a violation of some state procedural rule by the petitioner in presenting that claim.[54]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted:

(1)    Does a state procedural rule exist that applies to the petitioner's claim?

(2)    Did the petitioner fail to comply with that rule?

(3)    Did the state court rely on that failure as the basis for refusing to consider the merits of the petitioner's claim?

(4)    Is that state rule an adequate and independent state law basis for barring the federal habeas court from considering the claim?[55]

_____

[53] *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)) (emphasis in original).

[54] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citation omitted).

[55] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

In addition to these elements, the state procedural rule must be shown to be firmly established and regularly followed before the federal court will decline to review an allegedly defaulted claim.[56]

If a procedural default is established, it may be overcome if the petitioner can show cause for that default and prejudice from the court's failure to address the alleged constitutional violation, or if the petitioner can show actual innocence.[57]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded his compliance with the state procedural rule.[58] Demonstrating "prejudice" requires the petitioner to show that the alleged error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[59] There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[60]

However, the Supreme Court has held that federal habeas courts are not required to address a claimed issue of procedural default before deciding against a petitioner on the

---

[56] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[57] *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[58] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[59] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[60] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

merits.[61]  In that context, the Sixth Circuit has stated that a federal court may bypass an issue of procedural default when that issue presents complicated questions of state law and is unnecessary to resolving the claim against the petitioner.[62]

**B.  Application of standards**

*1.  Ground one should be denied since the state appeals court decision was not contrary to clearly established federal law.*

I note first that Sanchez has expended considerable effort arguing (1) that ground one does not precisely allege an *ex post facto* violation but, rather, is (2) an extension of the rule pronounced in *Bouie v. City of Columbia*[63] where the Court found, employing reasoning similar to *ex post facto*, that courts may not unexpectedly re-interpret an existing criminal statute to criminalize conduct that was not criminal prior to the court's new construction.[64]

So understood, Sanchez claims that the Ohio Supreme Court in *Foster* violated Due Process, as interpreted in *Bouie*, by unexpectedly eliminating the requirement that certain facts be found as a precondition to the imposition of non-minimum, consecutive sentences.[65]

---

[61] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[62] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[63] *Bouie v. City of Columbia*, 378 U.S. 347 (1964).

[64] *See*, ECF # 7 at 15-17.  "The Ohio Supreme Court did not consider whether the new remedy [of severing a factfinding requirement from the ability to impose non-minimum sentences] would violate Due Process per *Bouie*."  *Id*. at 17.

[65] Sanchez seems to contend that the proper and expected course, once Ohio accepted the rule in *Blakely v. Washington*, 542 U.S. 296 (2004), that only juries could find facts required for the imposition of non-minimum sentences, would have been for Ohio to permit only minimum sentences for all persons convicted prior to *Foster*.

-13-

He also alternatively suggests that Ohio's pre-*Foster* scheme may be more similar to the one in California that was rejected in *Cunningham v. California*.[66]  Permitting his re-sentencing to go forward without the need for predicate factual findings, but with potential liability for more than the minimum sentence, was, he contends, how the Ohio Supreme Court's *Bouie*/Due Process violation purportedly injured him.

I note preliminarily that Ohio's pre-*Foster* sentencing structure did not resemble California's pre-*Cunningham* system.   Ohio's pre-*Foster* scheme was grounded on presumptive minimum sentences, which could then be increased up to a maximum, all within a statutory range, upon the finding of certain facts by the trial judge.  In that regard, Ohio's former presumptive minimum sentence at the base of a prescribed range was not the same as a maximum sentence,[67] which was the core of California's system rejected by *Cunningham*.[68]

Thus, because Ohio's pre-*Foster* system did not involve a means whereby additional facts could warrant an increase above a maximum sentence – the situation in *Cunningham*

---

[66] *Cunningham v. California*, 549 U.S. 270 (2007).  *See*, ECF # 7 at 18-19.

[67] *Pitts v. Warden*, No. 3:08-cv-497, 2008 WL 4758697 (N.D. Ohio Oct. 29, 2008) (Oliver, J.), at *8.  "*Foster* did not eliminate a maximum sentence.  Rather, it struck down the presumption of a statutory minimum, which is not the same thing."

[68] As the Sixth Circuit recently observed in *United States v. DeWitt*, No. 06-4045, 2008 WL 5272496 (6th Cir. Dec. 18, 2008), prior to *Cunningham*, California judges were restricted to one of three fixed sentences for each offense, with no possibility for variation from those three terms, even with additional findings.  *Id.*, at *3 n.2 (citing *Cunningham*, 549 U.S. at 275).  On these facts, according to the Sixth Circuit in *DeWitt*, "the Supreme Court [in *Cunningham*] considered the mid-range sentence to be *the statutory maximum*."  *Id.* (emphasis added).

-14-

– but, rather, addressed factfinding as a precondition to fixing a term within a broad statutory range for that offense, any perceived *Blakely* violation found by *Foster* stemming from a judge finding those facts could be remedied, in the clear manner set forth by the Supreme Court in *Booker*,[69] by severing the need for any predicate factfinding before imposing any sentence within the legal range.[70]

Understood this way, there is no *Cunningham* issue before the Court, and Sanchez's claim in ground one is simply that the Ohio Supreme Court's decision in *Foster* created a *Bouie* problem by allegedly depriving Sanchez of his right to notice or fair warning that the penalties he was facing in his sentence were increased by *Foster*'s new construction of the Ohio sentencing law.

Therefore, considering ground one of the present petition in that light, I note that several District Judges of this Court have recently addressed the same arguments now made by Sanchez and have uniformly denied habeas relief.[71]  Although these decisions have

---

[69] *United States v. Booker*, 543 U.S. 220 (2005).

[70] *McGhee v. Konteh*, No. 1:07-cv-1408, 2008 WL 320763 (N.D. Ohio Feb. 1, 2008) (Nugent, J.), at *8 (citing *Booker*, 543 U.S. at 268).

[71] *See*, *Smith v. Wilson*, No. 1:08-cv-845, 2008 WL 4758696 (N.D. Ohio Oct. 29, 2008) (Oliver, J.); *Pitts*, 2008 WL 4758697; *Wentling v. Moore*, No. 3:07-cv-3089, 2008 WL 2778510 (N.D. Ohio July 14, 2008) (Boyko, J.); *Lyles v. Jeffreys*, No. 3:07-cv-1315, 2008 WL 1886077 (N.D. Ohio April 24, 2008)(Oliver, J.); *McGhee*, 2008 WL 320763 (Nugent, J.).

It should also be observed that Ohio courts have also uniformly rejected the arguments advanced here by Sanchez. *See*, *Watkins v. Williams*, No. 3:07-cv-1296, 2008 WL 2484192, at **6-7 (N.D. Ohio June 9, 2008) (collecting cases).

employed two distinct analytical approaches, they all have consistently rejected claims such as Sanchez's.

In one line of cases, some District Judges in this District have stressed that it is by no means clear that any federal habeas claim can rest on the imposition of consecutive sentences, regardless of whether they are imposed after judicial factfinding or not.

As District Judge Polster explained in *Cobbin v. Hudson*,[72] "although the Ohio Supreme Court [in *Foster*] has ruled that the imposition of consecutive sentences based on judicial factfinding violates *Blakely*, it is not at all clear that the U.S. Supreme Court would agree."[73] While recognizing that different federal district courts in Ohio have rejected and accepted claims based on *Blakely* violations in Ohio sentencing, the *Cobbin* court pointedly concluded that because there was no clearly established teaching from the United States Supreme Court on the issue, it would be difficult for a federal habeas court to find that an Ohio decision upholding the imposition of consecutive sentences based on predicate judicial

---

[72] *Cobbin v. Hudson*, No. 1:05-cv-2809, 2008 WL 552484 (N.D. Ohio Feb. 26, 2008). Judge Polster also restated this analysis in *Stalnaker v.Bobby*, No. 1:07-cv-2204, 2008 WL 4878120, at *27 (N.D. Ohio Nov. 12, 2008).

[73] *Id.*, at *3.

-16-

findings of fact was contrary to, or an unreasonable application of, any clearly established federal law.[74]

Next, in a second line of cases within this District, the argument that a retroactive application of *Foster* results in a *Bouie*-type violation of due process has been considered in light of the Sixth Circuit's teaching concerning the retroactive application of *Blakely* to the federal sentencing guidelines.  In *United States v. Barton*,[75] the Sixth Circuit, in addressing such a claim, began by construing *Bouie* in light of the Supreme Court's holding in the subsequent case of *Rogers v. Tennessee*.[76]  From these two Supreme Court decisions, the Sixth Circuit held that "when addressing ex post facto-due process concerns, questions of notice, foreseeability, and fair warning are paramount."[77]  The Sixth Circuit then concluded that because *Blakely* had been decided prior to the defendant's conviction, it "would not have

---

[74] *Id.  Accord*, *Wentling*, 2008 WL 2778510, at *8.  "[G]iving a court full discretion to select any sentence within a range of sentences for whatever reason it deems appropriate, *even if the court engages in judicial fact-finding in reaching its sentencing determination*, does not violate the holding in *Blakely*."  (Emphasis in original).  *See also*, *Cvjetinovic v. Eberlin*, No. 04-cv-2555, 2008 WL 918576 (N.D. Ohio March 31, 2008) (O'Malley, J.). *But see*, *Evans v. Hudson*, 1:07-cv-1291, 2008 WL 1929983, at *6 (N.D. Ohio April 28, 2008) (Lioi, J.).  *Blakely* could be violated by the judicial finding of facts beyond those "traditionally within the judge's province during sentencing...."

[75] *United States v. Barton*, 455 F.3d 649 (6th Cir. 2006).

[76] *Rogers v. Tennessee*, 532 U.S. 451 (2001).

[77] *Barton*, 455 F.3d at 655, citing *Rogers*, 532 U.S. at 459.

been a leap in logic to expect the Supreme Court to apply *Blakely*" to the federal sentencing guidelines in some manner and, so, due process was not violated.[78]

Employing that same *Barton* test of foreseeability and fair notice to claims concerning retroactive application of *Foster*, courts in this District have reached a similar result.

Judge Nugent in *McGhee* concluded that a habeas petitioner making the same due process argument as Sanchez here makes was not denied notice, foreseeability, or fair warning by the Ohio Supreme Court's decision in *Foster*.  *McGhee* observed that the petitioner "had sufficient notice and fair warning because he was aware of the potential penalty he faced before and after *Foster*."[79]  Specifically, the petitioner in *McGhee*, as here, was "on notice of the potential maximum penalty and the trial court's discretion to impose that penalty. Therefore, even following *Foster*, Petitioner had sufficient notice and fair warning of the potential maximum penalty that the judge could impose."[80]

Similarly, Judge Oliver, in *Smith*, also employing a foreseeability and fair notice analysis outlined in *Barton*, notes that "although Ohio's sentencing statutes at the time of Smith's criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the punishment which the Ohio legislature wished to impose on those who committed those acts.  As the reinterpreted statute did not increase the maximum penalty to which Smith was potentially subject, Smith cannot say that he was not given fair

---

[78] *Id*. at 653-54.

[79] *McGhee*, 2008 WL 320763, at *11.

[80] *Id*.

warning of what was prohibited or the potential penalties to which he would be subject if he committed those acts."[81]

In the present case, whether analyzed from the perspective that no underlying constitutional violation occurred in Sanchez's sentencing either pre or post *Foster* that would support a claim, or under the notice and foreseeability rubric of *Barton* that leads to the conclusions that Sanchez had adequate notice from the beginning of the potential penalties he was facing and that the sentencing judge had the authority to sentence within the statutory range, I recommend finding that ground one of Sanchez's petition be denied because the Ohio appeals court decision in this case was not contrary to any clearly established federal law.

**2.      *Ground two should be dismissed as procedurally defaulted or, alternatively, denied as without merit.***

In his second ground for relief, Sanchez asserts that, after the Ohio Supreme Court's decision in *Foster*, he should have been permitted to withdraw his plea of guilty.  He

---

[81] *Smith*, 2008 WL 4758696, at *14.  *See also*, *Pitts*, 2008 WL 4758697, at *8, where Judge Oliver notes, in discussing *Bouie*, that the "Supreme Court has never held that the retroactive application of a judicial reconstruction of a statute that results in the loss of a minimum sentence within a sentencing range violates the *Ex Post Facto* Clause or the due process clause of the United States Constitution."  Accordingly, Judge Oliver concluded that since there was no clearly established federal law on point, the state court decision against the petitioner was not contrary to any such clearly established federal law and so could provide no basis for federal habeas relief.

maintains that the plea was not knowingly or intelligently made since it was tendered in reliance on Ohio's pre-*Foster* sentencing structure.[82]

The State, in response, argues that the state appellate court properly found that Sanchez's attempt to withdraw his plea was barred both by the lack of jurisdiction in the trial court to entertain that motion once Sanchez's conviction became final after the first appeal, and by *res judicata* since the validity of the plea had not been raised in the first appeal, which solely concerned sentencing.[83]

Sanchez, in his traverse, claims it is "nonsensical"[84] and "ridiculous"[85] to assert that he should have raised the issue of his plea in the first appeal.

I observe first that Sanchez does not dispute that he did not raise this issue in his first appeal. As such, he seems to accept the premise that unless there is a reason for not so raising the issue at that time, it is, as the State asserts, procedurally defaulted here.

I observe next that it is by no means ridiculous to note that Sanchez did not raise the issue of his plea in his first appeal. That appeal was filed after the United States Supreme Court's decision in *Blakely* and after the Ohio Supreme Court had accepted the cases that would soon result in the *Foster* decision. In fact, Sanchez's brief on appeal, filed less than

---

[82] ECF # 1 at 8.

[83] ECF # 6 at 25-26.

[84] ECF # 7 at 19.

[85] *Id*. at 20.

-20-

three weeks before the *Foster* decision,[86] directly relies on *Blakely* as the basis for challenging the sentence imposed and seems to acknowledge that a *Blakely*-based challenge to Ohio's sentencing law is pending.[87]

Under these facts, it does not seem utterly nonsensical to think that Sanchez was well aware at the time he filed his brief in the first appeal that he had an argument as to whether his plea relied on a sentencing scheme that could soon be ruled unconstitutional rendering the plea, therefore, arguably invalid as not intelligently made.[88]  If he did have a basis for ascertaining such a claim during his first appeal, then Ohio's *res judicata* rule – which, among other things, requires that a claim be presented at the first opportunity[89] – would, as the appeals court here so found, bar him from attempting to raise the issue on his second appeal.[90]

---

[86] Foster was decided February 27, 2006 ( *see*, 109 Ohio St. 3d at 1) and Foster's brief was filed February 9, 2006.  ECF # 6, Attachment at 156.

[87] *See*, ECF # 6, Attachment at 148-50. After plainly claiming that the *Blakely* "decision also affects Ohio sentencing law as pertains to Mr. Sanchez" (*id.* at 149), the appellate brief then implicitly refers to the forthcoming decision in *Foster* by noting that Ohio "may yet correct" the *Blakely* problem with its sentencing.  *Id.* at 150.

[88] It should be noted that Sanchez's notice of appeal encompassed both his conviction and sentence, leaving him ample opportunity to raise an issue in his brief as to the basis for the plea.  ECF # 6, Attachment at 110.

[89] *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967) at paragraph nine of the syllabus.

[90] ECF # 6, Attachment at 345.

In sum, the record establishes that Sanchez did not raise this issue of his plea at his first opportunity – during his first appeal.  Under Ohio law, that is a procedural default that would here preclude the Court from reaching the merits of this claim.  He now seems to assert that the "cause" for that default was that is was logically impossible for him to know he had such a claim at the time of the first appeal.  As noted, I initially recommend finding that such "cause" is not established here and that the procedural default is not overcome.

However, despite this basis for finding Sanchez's second ground for relief barred by procedural default as the State asserts, I also note that the claim has no merit.  As already discussed, Sanchez suffered no due process injury by being re-sentenced under *Foster* because he already knew at the time he entered his plea both that he was subject to the maximum penalties for his offense and that the sentencing judge had authority to sentence up to the maximum.  Since the claim concerning withdrawal of the plea is thus based on the faulty premise that Sanchez entered his plea without knowledge of these things, there is no basis on the merits for concluding that the plea here was not "voluntarily, knowingly and intelligently" made.[91]

Thus, either because the State has established that this ground is procedurally defaulted and Sanchez has not overcome that default, or because, on the merits, Sanchez's claim has no merit, I recommend that ground two be either dismissed as procedurally defaulted or denied as without merit.

---

[91] *See*, *Bradshaw v. Stumpf*, 545 U.S.175, 183 (2005) (citation omitted).

**Conclusion**

For the foregoing reasons, I recommend denying and/or dismissing as indicated the petition of Salvador Sanchez for a writ of habeas corpus.

Dated:  January 22, 2009                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge


**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[92]

---

[92] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).